JOSHUA G. HAMILTON (SB# 199610)
joshuahamilton@paulhastings.com
NICHOLAS J. BEGAKIS (SB# 253588)
nickbegakis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE M. DAVIS-GREY, an individual<br><br>          Plaintiff,<br><br>      vs.<br><br>DRIVETIME CAR SALES COMPANY, LLC; an Arizona Limited Liability Company; DT ACCEPTANCE CORPORATION, an Arizona Corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; and DOES 1 through 75, inclusive,<br><br>          Defendants. | CASE NO.<br>CV14-3227 DMG-MAN<br>(County of Los Angeles Superior Court<br>Case No. BC540094)<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441 AND 1446** |



NOTICE OF REMOVAL OF ACTION TO
THE UNITED STATES DISTRICT COURT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants DriveTime Car Sales Company, LLC and DT Acceptance Corporation (collectively, "DriveTime") and Fidelity Deposit and Insurance Company of Maryland ("Fidelity"), remove this action from the Superior Court of the State of California for the County of Los Angeles, where it is now pending as Case No. BC540094, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a). The facts that entitle defendants to so remove are as follows:

1.      On or about March 20, 201, plaintiff Connie M. Davis-Grey ("Plaintiff") filed a Complaint in the Superior Court of California for the County of Los Angeles entitled: *Connie M. Davis Grey v. Drivetime Car Sales Company, LLC, et al.*, Case No. BC540094 ("Complaint"). The Complaint, which is attached to the declaration of Nicholas J. Begakis filed concurrently herewith as Exhibit "A," alleges purported causes of action for (1) breach of contract; (2) violations of the California Consumer Legal Remedies Act; (3) violations of California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.*; and (4) violations of California Vehicle Code § 11711.

2.      DriveTime first received notice that the Complaint might be filed via correspondence dated March 19, 2014 from Plaintiff's counsel attaching an unstamped copy of the Complaint and noting that it "would be filed." DriveTime was subsequently served with the Complaint on March 28, 2014. The Complaint was the first pleading, notice, order or other paper from which it could be ascertained that this action is removable. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed within thirty (30) days

1   after the receipt by DriveTime of the initial pleading and it is within one year after

2   commencement of the action.

### REMOVAL IS PROPER UNDER
### 28 U.S.C. § 1331(a)(1)

5       3.      This is a civil action within the original jurisdiction of this

6   Court, and may be removed pursuant to 28 U.S.C. § 1441 and the procedures set

7   forth in 28 U.S.C. § 1446, based on diversity jurisdiction under

8   28 U.S.C. § 1332(a)(1) ("Section 1332(a)(1)").

9       4.      Section 1332(a)(1) provides that the district courts "shall have

10  original jurisdiction of all civil actions where the matter in controversy exceeds the

11  sum or value of $75,000, exclusive of interests and costs, and is between – (1)

12  citizens of different states."

13  **A.   The Amount in Controversy Exceed $75,000 Exclusive of Interest
       and Costs**

15      5.      Plaintiff filed a Statement of Damages on March 20, 2014

16  ("Statement of Damages") setting forth claimed damages in excess of $75,000.00.

17  Begakis Decl. Ex. B.  The Statement of Damages specifically claims that "Plaintiff

18  reserves the right to seek $100,000.00 in actual damages, and $300,000.00 in

19  punitive damages." Begakis Decl. Ex. B.  Plaintiff further reserved the right to seek

20  additional damages beyond those amounts. *Id.*  Accordingly, Plaintiff seeks

21  damages in excess of the minimum amount in controversy requirement.

22  28 U.S.C. § 1331(a)(1).

23  **B.   Plaintiff and Defendants are Diverse**

24      6.      Plaintiff is a citizen of California.  Section 1332(a)(1) requires

25  that an action must be "between citizens of different states.  Plaintiff is a citizen of

26  California because she is domiciled in California.[1]  Plaintiff alleges that at all

27  ---
[1] For purposes of diversity jurisdiction, an individual is a citizen of the state in
28  which he or she is domiciled. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  A
    person is domiciled where she has established a fixed residence and intends to stay

1  relevant times she was a resident of the State of California and the County of Los

2  Angeles.[2] (*See* Begakis Decl. Ex. A, Compl. ¶ 1.) Plaintiff signed the installment

3  sales contract at issue on June 29, 2011 and stated her address in the installment

4  contract in Inglewood, CA 90301. (*See* Begakis Decl. Ex. A, Compl., ¶ 1.) (*See*

5  *id.*) In short, Plaintiff has admitted in the Complaint that she is a resident of

6  Inglewood, California, at all relevant times. Accordingly, Plaintiff is domiciled in

7  California and is therefore a citizen of California for purposes of Section

8  1331(a)(2).

9       7.   DriveTime Car Sales Company, LLC is a resident of Arizona.

10  DriveTime Car Sales Company, LLC is an Arizona limited liability company with

11  its principal place of business in Arizona. (Declaration of Jon Ehlinger (Ehlinger

12  Decl.) ¶ 3.) Its sole member is DriveTime Sales and Finance Company, LLC, an

13  Arizona limited liability company with its principal place of business in Arizona.

14  (*Id.*) The sole member of DriveTime Sales and Finance Company, LLC is

15  DriveTime Automotive Group, Inc., an Arizona Corporation with its principal place

16  of business in Arizona. (*Id.*) *See D.B. Zwirn Special Opportunities Fund, L.P. v.*

17  *Mehrotra*, 661 F.3d 124, 125-26 (1st Cir. 2011) (A limited liability company is a

18  citizen of each jurisdiction in which its members are citizens). Accordingly,

19  DriveTime Car Sales Company is a resident of Arizona.

20       8.   DT Acceptance Corporation is an Arizona corporation with its

21  principal place of business in Arizona. (Ehlinger Decl., ¶ 2); *see also* 28 U.S.C. §

22  1332(c)(1) ("[a] corporation shall be deemed to be a citizen of any State by which it

23  has been incorporated and of the State where it has its principal place of business");

24  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006)

25  there. *Id.* at 749-50. The intent to be domiciled is determined through a number of
objective factors including residence, driver's license, vehicle registration, location

26  of personal and real property, and any other indicia of intent stay in the State. *Id.* at
750.

27  [2] An individual's residence is prima facie evidence of citizenship. *See State Farm*

28  *Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

1   (LLC's have the citizenship of their owners).  Accordingly, DT Acceptance

2   Corporation is a citizen of Arizona.

3          9.    Fidelity and Deposit Company of Maryland is a Maryland

4   corporation with its principal place of business in Illinois.  (Declaration of Kathy

5   Alves , ¶ 2 *see also* 28 U.S.C. § 1332(c)(1) ("[a] corporation shall be deemed to be

6   a citizen of any State by which it has been incorporated and of the State where it

7   has its principal place of business").[3]

8          WHEREFORE, DriveTime prays that the above action now pending

9   against it in the Superior Court of the State of California, County of Los Angeles,

10  be removed to this Court.

11  DATED:  April 28, 2014      JOSHUA G. HAMILTON

12                       NICHOLAS J. BEGAKIS
                     PAUL HASTINGS  LLP

13

14                       By:_____
                                Nicholas J. Begakis

15                       Attorneys for Defendants

16                       DriveTime Car Sales Company, LLC and
                     DT Acceptance Corporation

17

18

19

20

21

22

23

24

25  _____

26  [3] DriveTime is informed and believes that DOES 1 through 10 are defendants sued
under fictitious names and have not as yet been served.  There is no allegation that
any such fictitious defendant is a resident of California.  *See Soliman v. Phillip*

27  *Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of Doe defendants
"becomes relevant only if and when plaintiff seeks leave to substitute a named

28  defendant.")

# EXHIBIT "A"

1 | ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner,  SBN: 109740
2 | Dana R. Turner,  SBN: 280039
10085 Carroll Canyon Road, Suite 100
3 | San Diego, CA 92131
TEL: (858) 348-1005
4 | FAX: (858) 348-1150
hal@rbblawgroup.com
5 | dana@rbblawgroup.com

6 | Attorneys for Plaintiff

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAR 2 0 2014

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

STANLEY MOSK COURTHOUSE

| | |
|---|---|
| CONNIE M. DAVIS-GREY, an individual; | CASE NO.   BC 5 4 0 0 9 4 |
| Plaintiff, | COMPLAINT |
| v. | 1.   ACTION ON A WRITTEN CONTRACT |
| DRIVETIME CAR SALES COMPANY, LLC; an Arizona Limited Liability Company; | 2.   VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT - EQUITABLE AND INJUNCTIVE RELIEF ONLY |
| DT ACCEPTANCE CORPORATION, an Arizona Corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland Corporation; and DOES 1 through 75, inclusive, | 3   VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200 |
| Defendants. | 4.   VIOLATION OF VEHICLE CODE §11711 |

## PARTIES AND VENUE

1.      Plaintiff is an individual who resided in the City of Inglewood, County of Los Angeles, State of California at the time the contract that is the subject of this lawsuit was entered into.

///

1

1      2.     Defendant Drivetime Car Sales Company, LLC ("Drivetime" or "the
2  dealership") is or was a car dealership, registered to do business in the State of
3  California, and doing business in the City of Torrance, County of Los Angeles.

4      3.     Defendant DT Acceptance Corporation, ("DT Acceptance") is and was at
5  all material times an Arizona Corporation, doing business through Drivetime in the
6  City of Torrance, County of Los Angeles, State of California. DT Acceptance, as the
7  "Holder," accepted assignment of the Retail Installment Sale Contract ("RISC") for the
8  purchase of the 2003 Dodge Neon, VIN: 1B3ES26C03D243416, ("the vehicle") by
9  Plaintiff. All claims and defenses that Plaintiff can maintain against the dealership can
10 also be maintained against DT Acceptance.

11     4.     Defendant Fidelity and Deposit Company of Maryland ("Fidelity") is a
12 Maryland Corporation, that issued the bond to Drivetime under Vehicle Code §17110
13 (Bond #08973514, effective January 8, 2010) and is therefore liable for the acts of
14 Drivetime, and Does 1 through 75 for the illegal conduct stated in this Complaint.

15     5.     Plaintiff does not know the true names and capacities, whether corporate,
16 partnership, associate, individual or otherwise, of Defendants sued herein as
17 Does 1 through 75, inclusive, and thus names them under the provisions of §474 of the
18 California Code of Civil Procedure. Defendants Does 1 through 75, inclusive, are in
19 some manner responsible for the acts, occurrences and transactions set forth herein,
20 and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named
21 herein. Plaintiff will set forth the true names and capacities of the fictitiously named
22 Defendants together with appropriate charging allegations when ascertained.

23     6.     All acts of the dealership's employees as hereinafter alleged were
24 authorized or ratified by the owner or managing agents of Drivetime.

25     7.     Each Defendant, whether actually or fictitiously named herein, was the
26 principal, agent (actual or ostensible), co-conspirator, or employee of each other
27 Defendant and in acting as such principal or within the course and scope of such
28 employment, agency, or conspiracy, took some part in the acts and omissions

1   hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the

2   relief prayed for herein.

3        8.      Plaintiff signed a RISC for the purchase of the vehicle that is the subject

4   of this litigation. A true and correct copy of the RISC is attached hereto as Exhibit 1.

5        9.      The RISC for the vehicle includes the following language:

6        NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
         SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
7        COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
         OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS
8        HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT
         EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
9

10       10.     This Notice makes DT Acceptance liable, contractually and under State

11   law, for all claims and defenses that could be raised against Drivetime, with respect to

12   the purchase/sale of the vehicle. DT Acceptance, therefore, is liable for the acts of

13   Drivetime, as stated herein.

14       11.     The significance of the Holder Clause is that it completely eliminates the

15   protection traditionally afforded to a Holder in Due Course by subjecting a Holder to the

16   same claims and defenses that a Buyer can assert against a Seller or a Seller's assignee.

17       12.     The inclusion of the Holder Clause in a RISC, such as the contract at issue

18   in this case, places Holder (DT Acceptance) on notice that, if it agrees to accept

19   assignment of that contract, it necessarily also agrees to waive the protections

20   traditionally afforded to a Holder in Due Course and to be subject to the same claims

21   and defenses that the Buyer could assert against the Seller or the Seller's assignee.

22       13.     As a result, when a Holder accepts assignment of a RISC bearing the

23   Holder Clause for the purchase and sale of a vehicle in California, it also implicitly

24   agrees to assume greater responsibility to the Buyer than statutorily required by the

25   Automobile Sales Finance Act ("ASFA"). In essence, the Holder agrees to stand in the

26   shoes of the Seller and assumes the risk of Seller misconduct. Where, as here, a

27   dealer/seller has violated California law, the Holder, DT Acceptance, (having

28   relinquished its statutory right to limited enforcement of the contract by contractually

3

COMPLAINT

1  assuming the status of the dealership), cannot enforce the RISC against Plaintiff,
2  regardless of the lack of knowledge, and should Plaintiff elect to rescind the RISC, bears
3  the dealership's responsibility for refunding all monies paid by Plaintiff pursuant to the
4  contract, including monies paid directly to the dealership prior to the assignment.

5      14.   DT Acceptance is, therefore, liable for all of the dealership's misconduct
6  as laid forth below, with the right of rescission and damages, as established by the
7  evidence.

8                          <u>SUMMARY OF ALLEGATIONS</u>

9      15.   On June 29, 2011, Plaintiff went to Drivetime to shop for a vehicle. When
10 Plaintiff viewed the 2003 Dodge Neon, VIN: 1B3ES26C03D243416, the advertised price
11 displayed on the vehicle was $7,998. Plaintiff decided to purchase the vehicle, but when
12 she reviewed the RISC in the finance office, she noticed the cash price on Line 1(A) of
13 her RISC was $10,998. Plaintiff asked a Drivetime representative about the price
14 discrepancy, who then informed Plaintiff she was charged $3,000 for a service contract.
15 Plaintiff informed the representative her niece worked for State Farm, and she
16 preferred to purchase a warranty through her relative. Drivetime's representative
17 informed Plaintiff the charge was mandatory, and if she wanted to purchase the vehicle,
18 she was required to purchase the $3,000 service contract as well.

19     16.   Failing to sell a vehicle to a person at the advertised price (price displayed
20 on the vehicle's window), exclusive of taxes, vehicle registration fees, the California tire
21 fee, .... amount charged for a service contract, etc., violates Vehicle Code §11713.1(e).
22 Furthermore, adding any fees/costs to Line 1(A)(1) of the RISC is a violation of the
23 Automobile Sales Finance Act ("ASFA"). Line 1(A)(1) is for disclosure of the "cash price"
24 of the vehicle only. The amount stated on Line 1(A)(1) of the RISC should be $7,998.

25     17.   Further, service contracts are optional products that are required to be
26 disclosed on Line 1(F) RISCs.

27     18.   Additionally, the vehicle was used when sold to Plaintiff requiring
28 disclosure of any applicable License Fees on Line 2(A) of the RISC and disclosure of

4

1  Registration/Transfer/Titling Fees on Line 2(B). When selling a used vehicle, there
2  must be an amount disclosed on Line 2(B). Drivetime failed to disclose the
3  Registration/Transfer/Titling Fees on Line 2B of Plaintiff's RISC making it impossible
4  to determine the actual amount owed for License Fees on Line 2(A).

5      19.    A vehicle purchaser is entitled to a refund for any overpayment of License
6  Fees paid. By lumping together the License Fees and Registration/Transfer/Titling Fees
7  all onto Line 2(A) of the RISC, Plaintiff does not know the true amount of the License
8  Fees, and, therefore, doesn't know if she is entitled to a refund of any overcharge.
9  Without proper disclosure of these fees, she doesn't know if she is entitled or how much
10 of a refund she is entitled to.

11     20.    A dealership is required to correctly state and itemize the License Fees due
12 on Line 2A and the Registration/Transfer/Titling Fees due on Line 2(B). In a used
13 vehicle purchase, there is always at least a charge of $15 due for transferring title to the
14 vehicle. This amount must be disclosed on Line 2(B). Plaintiff's RISC states "0.00" on
15 Line 2B.

16     21.    Subsequent to purchase, Plaintiff discovered the vehicle was once
17 registered as a prior rental. California law prohibits a dealer from making a statement
18 as part of a plan or scheme with th intent not to sell any vehicle as advertised, Cal.
19 Vehicle Code §11614(a). The scheme begins with Drivetime failing to disclose the
20 vehicle's rental status on advertisement for the vehicle. Under California law, dealers
21 have a duty to disclose a vehicle's prior rental status clearly and conspicuously in all
22 advertisements. See 13 Cal. Code of Regulations §260.2. Drivetime advertised the
23 vehicle on its website, and on information and belief, Drivetime willfully or recklessly
24 failed to fulfill its duty to disclose the vehicle's prior rental history on the
25 advertisement, a clear violation of 13 Cal. Code of Regulations §260.2.

26     22.    Drivetime did not disclose the vehicle's prior rental status on its Buyer's
27 Guide, and at no point during the transaction did a Drivetime representative inform
28 Plaintiff of the vehicle's rental car status. There is no distinction between a material

1  fact and a misrepresentation as to such a fact. Drivetime knows it is legally required

2  to disclose this information, yet it purposefully conceals this information from its

3  customers.

4      23.    Plaintiff was not in the market to purchase a prior rental vehicle, and

5  would not have purchased this one had it been disclosed. Upon further review, the

6  inventory displayed on Drivetime's website includes many prior rental vehicles. None

7  of these prior rental vehicles' advertisements contain any information about their prior

8  rental status. Many consumers have undeniably fallen victim to Drivetime's deceptive

9  advertisements.

10              **FIRST CAUSE OF ACTION**

11      **Action on a Written Contract – as to all Defendants except**

12              **Fidelity and Deposit Company of Maryland**

13      24.    Plaintiff incorporates by reference each and every allegation set forth in

14  Paragraphs 1 through 23, inclusive, of this Complaint.

15      25.    The RISC executed by Plaintiff for the purchase of the vehicle is a

16  "conditional sale contract" pursuant to Civil Code Section 2981(a).

17      26.    Drivetime is a "seller" pursuant to Civil Code Section 2981(b).

18      27.    CPS is the Holder of the RISC and is liable to Plaintiff for Drivetime's

19  violations of the Automobile Sales Finance Act ("ASFA").

20      28.    Plaintiff is a "buyer" pursuant to Civil Code Section 2981(c).

21      29.    The vehicle purchased by Plaintiff is a "motor vehicle" pursuant to Civil

22  Code Section 2981(k).

23      30.    Drivetime advertised the vehicle for $7,998, but sold the vehicle for a cash

24  price of $10,998, $3,000 more than its advertised price.

25      31.    When Plaintiff inquired about the price discrepancy, Drivetime informed

26  her the $3,000 charge was for a mandatory service contract. Service contracts are not

27  only optional, but any charges for such are required to be displayed on Line 1(F).

28  ///

32.     Furthermore, adding any fees/costs to Line 1(A)(1) of the RISC is also a violation of Civil Code §2982. Line 1(A)(1) is for disclosure of the "cash price" of the vehicle only. The amount stated on Line 1(A)(1) of the RISC should be $7,998.

33.     Additionally, the RISC fails to properly disclose the Registration, Transfer, and Titling Fees due in violation of Civil Code Sections 2982(a)(2)(A) and (B).

34.     A dealership is required to correctly state and itemize the License Fees due on Line 2(A) and the Registration/Transfer/Titling Fees due on Line 2(B). In a used vehicle purchase, there is always at least a charge of $15 due for transferring title to the vehicle. This amount must be disclosed on Line 2(B). Plaintiff's RISC states "0.00" on Line 2B.

35.     A vehicle purchaser is entitled to a refund for any overpayment of License Fees paid. By lumping together the License Fees and Registration/Transfer/Titling Fees all onto Line 2(A) of the RISC, Plaintiff does not know the true amount of the License Fees, and, therefore, doesn't know if she is entitled to a refund of any overcharge. Without proper disclosure of these fees, she doesn't know if she is entitled or how much of a refund she is entitled to.

36.     Plaintiff has been damaged by Drivetime's violations of the ASFA. Based on these violations, Plaintiff is entitled to return of all monies paid under the Contract, pursuant to Civil Code §2983, and have the right to elect rescission and cancel the Contract under Civil Code §2983.1. As to the "holder," Plaintiff reserves the right to be excused from payment of all finance charges, both past and future, as an alternative remedy to those set forth herein.

37.     Plaintiff also seeks attorneys' fees and costs pursuant to Civil Code Section 2983.4.

/ / /

/ / /

/ / /

/ / /

1        <u>SECOND CAUSE OF ACTION</u>

2    Violation of the Consumers Legal Remedies Act, Civil Code §1750, *et seq.* -

3        Equitable and Injunctive Relief, Only – as to all Defendants except

4                Fidelity and Deposit Company of Maryland

5        38.    Plaintiff incorporates by reference each and every allegation set forth in

6    Paragraphs 1 through 37, inclusive, of this Complaint.

7        39.    The vehicle constitutes "goods" bought for use primarily for personal,

8    family or household purposes pursuant to Civil Code Section 1761(a).

9        40.    Drivetime is a "person" pursuant to California Civil Code Section 1761(c).

10       41.    Plaintiff is a "consumer" pursuant to California Civil Code Section 1761(d).

11       42.    The advertisement and sale of the vehicle to Plaintiff are "transactions"

12   pursuant to California Civil Code Section 1761(e).

13       43.    Under the Consumers Legal Remedies Act ("CLRA"), the following acts are

14   prohibited: (2) Misrepresenting the source, sponsorship, approval, or certification of

15   goods or services; (5) Representing that goods or services have sponsorship, approval,

16   characteristics, ingredients, uses, benefits, or quantities which they do not have or that

17   a person has a sponsorship, approval, status, affiliation, or connection which he or she

18   does not have; (7) Representing that goods or services are of a particular standard,

19   quality or grade, or that goods are of a particular style or model, if they are of another;

20   (9)Advertising goods or services with intent not to sell them as advertised;

21   (14) Representing that a transaction confers or involves rights, remedies, or obligations

22   which it does not have or involve, or which are prohibited by law; and (16) Representing

23   that the subject of a transaction has been supplied in accordance with a previous

24   representation when it has not.

25       44.    Drivetime violated the CLRA by: (1) Grossly inflating the cash price for the

26   vehicle; (2) Forcing a consumer to purchase an optional product; (3) Selling the vehicle

27   over advertised price; (4) Adding a finance charge or other fee to Line 1(A)(1) of the

28   RISC; (5) Overcharging License Fees on Line 2(A) of the RISC; (6) Failing to properly

1   itemize the amounts due on Lines 2(A) and 2(B) of the RISC; (7) Falsely stating no

2   charge applied to Line 2(B); (8) Selling the vehicle as part of a scheme of not selling

3   vehicles as advertised; and (9) Failing to disclose the vehicle's prior rental history.

4       ·45.   . DT Acceptance violated the CLRA by: (1) Accepting assignment of a RISC

5   that is illegal on its face; and (2) Accepting assignment of illegal RISCs from Drivetime

6   and potentially other dealerships.·

7       46.   Plaintiff, concurrent with the filing of this Complaint, mailed to

8   Defendants, via certified and regular mail, a copy of the lawsuit, which seeks equitable

9   and injunctive relief, only, and serves as notice to Defendants of Drivetime's and DT

10   Acceptance's violations of the CLRA. No monetary damages are sought under the CLRA

11   at this time. Equitable and injunctive relief only are sought under the CLRA at this

12   time.

13       47.   The CLRA provides that a complaint for violations of that statutory act

14   may be amended without leave of court should the violations not be remedied within

15   thirty (30) days of the filing of the lawsuit. Plaintiff will amend this Complaint to add

16   a claim for damages under the CLRA for violations of ·California Civil Code

17   §§1770(a),(2),(5),(7),(9),(14), and (16), should the violations complained of herein not be

18   remedied within the requisite time frame. In addition to actual, statutory, general,

19   incidental, and consequential damages, Plaintiff will seek punitive damages from

20   Drivetime and DT Acceptance for its malicious, oppressive and fraudulent acts against

21   Plaintiff.

22       48.   Civil Code §1780(a)(2) of the CLRA provides that a consumer is entitled

23   to an injunction prohibiting acts or practices which violate the CLRA. Plaintiff seeks

24   an order enjoining Ddrivetime, and DT Acceptance from engaging in the acts, methods,

25   and practices set forth in Paragraphs 44, and 45, of this Complaint.

26   / / /

27   / / /

28   / / /

## THIRD CAUSE OF ACTION

### Violation of Business & Professions Code §17200, *et seq.* – as to all

### Defendants except Fidelity and Deposit Company of Maryland

49.     Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 48, inclusive, of this Complaint.

50.     Drivetime committed acts of unfair competition, as defined by Business and Professions Code Section 17200, *et seq.* As set forth more fully above, Drivetime has engaged in a course of conduct of systematically violating the consumer laws in this State prohibiting the commitment of deceptive practices, including the laws of fraud and deceit, and the various prohibitions contained in the Consumers Legal Remedies Act and Automobile Sales Finance Act as set forth in detail above.

51.     Drivetime has engaged in an "unlawful" business act and/or practice by: (1) Grossly inflating the cash price for the vehicle; (2) Forcing a consumer to purchase an optional product; (3) Selling the vehicle over advertised price; (4) Adding a finance charge or other fee to Line 1(A)(1) of the RISC; (5) Overcharging License Fees on Line 2(A) of the RISC; (6) Failing to properly itemize the amounts due on Lines 2(A) and 2(B) of the RISC; (7) Falsely stating no charge applied to Line 2(B); (8) Selling the vehicle as part of a scheme of not selling vehicles as advertised; and (9) Failing to disclose the vehicle's prior rental history.

52.     DT Acceptance has engaged in an "unlawful" business act and/or practice by: (1) Accepting assignment of a RISC that is illegal on its face; and (2) Accepting assignment of illegal RISCs from Drivetime and other dealerships.

53.     As detailed above, these business acts and practices violated numerous provisions of both state and federal law, including, but not limited to the CLRA and the ASFA.

54.     The harm to Plaintiff outweighs the utility of Drivetime and DT Acceptance's policies and practices particularly considering the available alternatives, and that Drivetime and DT Acceptance's policies and practices are immoral,

10

1  unscrupulous, unethical and against public policy. Drivetime and DT Acceptance's

2  policies and practices consequently constitute an "unfair" business act or practice within

3  the meaning of Business and Professions Code Section 17200.

4       55.    Drivetime and DT Acceptance's deceptive policies and practices as set forth

5  above also are likely to and/or have deceived Plaintiff. Thus, Drivetime and DT

6  Acceptance have also engaged in "fraudulent" business practices.

7       56.    Drivetime and DT Acceptance have engaged in, and continues to engage

8  in, the same form of deceptive acts and practices.

9       57.    Drivetime and DT Acceptance's unlawful, unfair and fraudulent business

10  practices present a continuing threat to Plaintiff and others in that Drivetime and DT

11  Acceptance will continue utilizing similar policies and practices.

12       58.    Business and Professions Code Section 17203 provides that Plaintiff is

13  entitled to an order enjoining Drivetime and DT Acceptance from engaging in acts or

14  practices that violate Business and Professions Code Section 17200, as well as providing

15  for equitable monetary relief so as to preclude the retention of all ill-gotten monies by

16  Drivetime and DT Acceptance or so as to restore any monies wrongfully obtained by

17  Drivetime and DT Acceptance to Plaintiff. Plaintiff has lost money and suffered injury

18  in fact as a result of Drivetime and DT Acceptance's illegal conduct. Plaintiff seeks such

19  equitable monetary relief, and an order enjoining Drivetime and DT Acceptance from

20  engaging in the acts and practices set forth in this Complaint, imposing an asset freeze

21  or constructive trust over such monies as the Court deems appropriate, as well as

22  compelling a corrective informational campaign to correct the misperceptions in the

23  marketplace created by such conduct.

24       59.    Plaintiff further seeks attorneys' fees and costs.

25  / / /

26  / / /

27  / / /

28  / / /

COMPLAINT

<u>FOURTH CAUSE OF ACTION</u>

Violation of Vehicle Code §11711, *et seq.* – as to all Defendant

Fidelity and Deposit Company of Maryland, only

60.     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 59 inclusive, of this complaint.

61.     As a condition of obtaining a license from the California DMV to sell vehicles, Drivetime was required by Vehicle Code §11710 to obtain, and did obtain, a surety bond in the amount of $50,000 from Fidelity.

62.     Fidelity issued Bond #08973514, effective January 8, 2010, to Drivetime, to fulfill its obligations under Vehicle Code §11710. The bond issued to Drivetime was in effect on the date of the incidents alleged in this Complaint.

63.     Pursuant to Vehicle Code §11710(a), the bond was issued to Drivetime and made payable to "a purchaser" in the case of "fraud" by Drivetime.

64.     Plaintiff is a purchaser within the meaning of Vehicle Code §11710(a). Fraud, as that term is used in Vehicle Code §11710(a), is the same fraud as commonly defined in the law, including fraud as defined in Civil Code §§1571, 1572, 1573 and Vehicle Code §11710(a). *See Beverly Finance Co. v. American Casualty Co. of Reading* (1969) 273 Cal.App.2d 259.

65.     As set forth herein, Defendant Drivetime has committed fraud within the meaning of Civil Code §§1571, 1572, 1573 and Vehicle Code §11710(a).

66.     Vehicle Code §11711(a) provides a consumer with a cause of action against the bond if a dealership committed fraud. Plaintiff alleges that Drivetime committed fraud in the sale of the vehicle to her by: (1) Grossly inflating the cash price for the vehicle; (2) Forcing a consumer to purchase an optional product; (3) Selling the vehicle over advertised price; (4) Adding a finance charge or other fee to Line 1(A)(1) of the RISC; (5) Overcharging License Fees on Line 2(A) of the RISC; (6) Failing to properly itemize the amounts due on Lines 2(A) and 2(B) of the RISC; (7) Falsely stating no

/ / /

charge applied to Line 2(B); (8) Selling the vehicle as part of a scheme of not selling vehicles as advertised; and (9) Failing to disclose the vehicle's prior rental history.

67.   Fidelity is liable under the bond to Plaintiff, based on the fraud of Drivetime, in the amount of the purchase price of the vehicle, or such other sum as is established at the time of trial, according to proof.

Accordingly, Plaintiff prays for judgment as follows and as permitted as to each cause of action:

1.   For general damages according to proof at trial, excluding the Consumers Legal Remedies Act at this time;

2.   For rescission of the purchase contract;

3.   For incidental and consequential damages according to proof at trial, excluding the Consumers Legal Remedies Act at this time;

4.   For the equitable and injunctive relief permitted under Civil Code §1780 and Business & Professions Code §17200;

5.   For pre-judgment interest at the legal rate;

6.   For reasonable attorneys' fees and costs of suit as permitted by law (including, but not limited to, Civil Code §§1780(d), 1794, 2983.4, and the bond company claims);

7.   For such other and further relief as the Court deems just and proper under the circumstances; and

8.   No request for damages of any type are sought under the Consumers Legal Remedies Act at this time.

DATED: March K, 2014

ROSNER, BARRY & BABBITT, LLP

By: _____
Hallen D. Rosner
Attorney for Plaintiff

13
COMPLAINT

# EXHIBIT 1

115006444301

SIMPLE INTEREST RETAIL INSTALLMENT CONTRACT       REPRINT DATE:    29/2011      SALES DATE: 6/29/2011

| Buyer (and Co-Buyer) Name and Address | Dealer/Creditor Name and Address |
|---|---|
| CONNIE MARIA DAVIS-GREY | DRIVETIME CARSALES COMPANY LLC |
| | 18313 HAWTHORNE BLVD. |
| 807 WALNUT ST 3 | TORRANCE, CA 90504-4510 |
| INGLEWOOD, CA 90301-3399 | 310-793-1666 |
| 424-227-6293        323-293-6284 | 115006444301 |

You, the Buyer (and Co-Buyer or Co-Signer, if any), may buy the motor vehicle described below (the "Vehicle") for cash or on credit. The cash price is shown below as "Cash Price". By signing below, you represent that you have been quoted only one cash price for the Vehicle. The credit price is shown below as "Total Sale Price". By signing this Contract, you choose to buy the Vehicle on credit as described in this Contract.  "We", "us" and "our" refer to the Dealer shown above, and, after assignment of this Contract, to DT Acceptance Corporation.

| New/Used | Model Year and Make | Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2003 DODGE | NEON | 1B3ES26C03D243416 | [X] Personal  [ ] Agricultural  [ ] Business |

| Trade-In: | Year | Make | Model |
|---|---|---|---|
| | | | |

## FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid when you have made all scheduled payments | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 500.00 |
|---|---|---|---|---|
| 22.840  % | $  6,241.39 | $  11,681.34 | $  17,922.73 | $  18,422.73 |

### Payment Schedule

| Number of Payments | Amount of Each Payment | When Payments Are Due |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| 95 | $  186.70 | Semi-Monthly Beginning  07/18/2011 |
| 1 Final Payment | $  186.23 | 07/03/2015 |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.
**Late Payment:** You must pay a late charge on the part of each payment not made within 10 days after the date the payment is due. The charge is five percent (5%) of the late amount.
**Security Interest:** You are giving a security interest in the Vehicle being purchased.
Please read this Contract for additional information on security interests, non-payment, default, and our right to require repayment of your debt in full before the scheduled maturity date.
**Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement.  (3) You can prepay the full amount due under this agreement at any time.  (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement)**

| THERE IS NO COOLING OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION | YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT. YOU ALSO ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF ALL PAGES OF THE CONTRACT AT THE TIME YOU SIGN IT. |
|---|---|
| California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this Contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this Contract with the agreement of the seller or for legal cause, such as fraud. | |
| However, California law does require a seller to offer a 2 day contract cancellation option on used vehicles with a purchase price of less than $40,000, subject to certain statutory conditions.  This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle or an off-highway motor vehicle subject to identification under California law.  See the vehicle contract cancellation option agreement for details. | |

## CUSTOMER COPY
### (Signed English original on file with DriveTime.)

ACARC1V01 (5/25/2011)                                                                                  Page 1 of 5

...IZATION OF THE AMOUNT FINANCED

1.  **Total Cash Price**
    A.  Cash Price of Motor Vehicle and Accessories                                   $____10,998.00 (A)
        (1)  Cash Price Vehicle                          $  10,998.00
        (2)  Cash Price Accessories                      $    N/A
    B.  Document Preparation Fee (not a government fee)                               $_____.00 (B)
    C.  Smog Fee Paid to Seller                                                       $_____29.75 (C)
    D.  Sales Tax (on A + B + C)                                                      $___1,130.34 (D)
    E.  Optional DMV Electronic Filing Fee*                                           $_____N/A (E)
    F.  Service contract (optional)*                                                  $_____N/A (F)
    G.  Prior Credit or Lease Balance paid by Seller to ____N/A                       $_____N/A (G)
        (see downpayment and trade-in calculation)
    H.  Other (to whom paid)* _____
        For Optional Debt Cancellation Agreement* _____                         $_____N/A (H)
    I.  Other (to whom paid)* _____
        For _____                                                         $_____N/A (I)
    J.  Used Vehicle Contract Cancellation Option Agreement (optional)*               $_____.00 (J)
        Total Cash Price (A through J)                                               $  12,158.09 (1)
2.  **Amounts Paid to Public Officials**
    A.  License Fees                                                                  $_____15.00 (A)
    B.  Registration/Transfer/Titling Fees                                           $_____.00 (B)
    C.  California Tire Fees*                                                         $_____N/A (C)
    D.  Other____N/A                                                                 $_____N/A (D)
        Total Official Fees (A through D)                                           $_____15.00 (2)
3.  **Amount Paid to Insurance Companies (Total Premiums)**                          $_____N/A (3)
4.  **Smog for Certification, Noncompliance, Exemption, or Waiver Fee Paid to State** $_____8.25 (4)
5.  **Subtotal (1 through 4)**                                                       $  12,181.34 (5)
6.  **Total Down Payment**
    A.  Gross Trade-In Allowance Yr _____ Make _____                      $_____.00 (A)
        Model _____ Odom _____ VIN _____
    B.  Less Prior Credit or Lease Balance                                           $_____.00 (B)
    C.  Net Trade-In (A Less B) (indicate if a negative number)                      $_____.00 (C)
    D.  Deferred Downpayment                                                         $_____N/A (D)
    E.  Manufacturer's Rebate                                                        $_____N/A (E)
    F.  Other____N/A                                                                 $_____N/A (F)
    G.  Cash                                                                         $_____500.00 (G)
        Total Downpayment (C through G)                                             $_____500.00 (6)
        (if negative, enter zero for Total Downpayment and enter the amount less than zero as a positive number in 1G above)
7.  **Amount Financed (5 less 6)**                                                   $__11,681.34 (7)
        *Seller may receive or retain part of these amounts.

You agree to pay a finance charge on the Amount Financed at the Annual Percentage Rate shown on page 1. This rate is referred to in this Contract as the Contract Rate. The Federal Truth in Lending Disclosures on page 1 are also terms of this Contract.

---

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

---

If you have a complaint concerning this sale, you should try to resolve it with the seller. Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or any investigator for the Department of Motor Vehicles, or any combination thereof. After this Contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

CUSTOMER COPY
(Signed English original on file with DriveTime.)

115008444301

## OPTIONAL DEBT CANCELLATION AGREEMENT

**Optional Debt Cancellation Agreement.** An Optional Debt Cancellation Agreement is not required to obtain credit, and will not be provided unless you agree and pay the cost as shown in item 1.H. on page 2 of this Contract.  This Agreement is our promise to waive the deficiency amount, if any, between the Contract balance and the insurance proceeds from your physical damage insurance coverage in the event of a total loss of the vehicle, as defined in the Agreement.  You may still be liable for past due payments, late charges, and the deductible under your insurance coverage.  The Agreement provides the details of the coverage, including the administrator of this coverage.  You want the Optional Debt Cancellation Agreement.

Term:_____   Mos._____

## NOTICES REQUIRED BY FEDERAL LAW

**Used motor vehicle Buyers Guide.**  If you are buying a used vehicle with this Contract, federal regulations may require a special Buyers Guide to be displayed on the window of the Vehicle.  **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT.  INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

**Payments:**  You jointly and severally agree to make all payments when they are due according to the Payment Schedule shown in the Federal Truth in Lending Disclosure Box on the first page of this Contract.  You may prepay this Contract at any time without penalty.  Interest will accrue on any amounts remaining unpaid after maturity at the Annual Percentage Rate disclosed in the Federal Truth in Lending Disclosure Box on the first page of this Contract.

**Security Interest:**  To secure your obligations, you give us a security interest in the Vehicle, all accessions, attachments, accessories and equipment placed in or on the Vehicle and all proceeds of the Vehicle.  You also give us a security interest in all money or goods received for the Vehicle and all insurance premiums, service and other contracts we finance.  The security interest secures payment of all amounts you owe in this Contract and performance of your other agreements in this Contract.  You will not grant anyone else a security interest, lien or any other claim to the Vehicle without our express prior written consent.  We reserve our right of setoff (we can apply funds we owe you to what you owe us under the Contract) to the extent not prohibited by applicable law.

**Finance Charges:**  This is a simple interest Contract.  The Finance Charges you pay will depend on how you make your payments.  Your actual Finance Charges may be more than the disclosed Finance Charges if you make your payments late or in less than the scheduled amount.  We will apply payments to late charges, Finance Charges and to the unpaid balance of the cash price and other charges in any manner we choose unless we are required by law to apply payments in a particular order.  Finance Charges are earned by applying the Contract Rate to the unpaid Balance of Cash Price and Other Charges for the time such balance is owed.  The Dealer may receive a portion of the Finance Charges.

**Use of Vehicle:**  You must take care of the Vehicle.  You must obey all laws in using it.  You must keep the Vehicle in your possession at the Buyer's address shown above, unless we approve another address in writing.  You may not sell or rent the Vehicle.  You must keep it free from the claims of others.  You will not take it out of the United States without our prior written consent.  You will immediately tell us of any change in your address or the address where the Vehicle is regularly kept.  You agree not to add to the Vehicle any accessories, equipment or any other property in which any other person has an ownership or security interest.

**Warranties Seller Disclaims:**  Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Contract, the Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.  This provision does not affect any warranties covering the vehicle or parts thereof that the Vehicle manufacturer or parts supplier may provide.  Only the manufacturer or supplier shall be liable for performance under their warranties.  If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

**Vehicle Insurance:**  You must insure yourself and us for the term of this Contract against loss of or damage to the Vehicle with a policy in the Buyer's name acceptable to us.  **You may obtain insurance on the vehicle from a person of your choice that is authorized to sell such insurance and is acceptable to us.**  You will maintain comprehensive fire, theft and collision coverage, insuring the Vehicle for at least the Vehicle's fair market value.  You will name us as loss payee and provide whatever evidence of insurance we request.  We must approve the type and amount of insurance.  If you do not maintain the required insurance you will be in default.  We may buy substantially similar coverage at your expense.  We will add the cost of such insurance to your obligations due under this Contract and/or collect those costs separately from you.  You agree to pay such costs either upon our demand or in installments, subject to a finance charge at the Contract Rate, if we elect to apply a finance charge.  The insurance we buy may, at our option, protect only our interest, or both your interest and ours.  Insurance we buy may cost substantially more than insurance you buy.  We will cancel the insurance we buy if you give us satisfactory proof of insurance.  Whether or not the Vehicle is insured, you will pay us all you owe under this Contract

CUSTOMER COPY
(Signed English original on file with DriveTime.)

even if the Vehicle is lost, damaged beyond repair, or destroyed.

You are not required as a condition of financing the purchase of the Vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. Your choice of insurance providers will not affect our decision to sell you the Vehicle or extend credit to you.

**Late Charges and Returned Checks:** The charge for late payments is shown in the Federal Truth in Lending Disclosure Box on the first page of this Contract. You must also pay any cost we pay to collect any late payment, as allowed by law. When we accept a late payment or late charge, that does not excuse your default or mean that you can keep making payments late. You agree to pay the charge of $15 for any check, draft or negotiated order of withdrawal you give us that is returned for any reason.

**Default:** You will be in default if you do not make any payment in full when such payment is due. You will be in default if you gave false or misleading information on your application relating to this Contract. You will be in default if you file a bankruptcy petition or if one is filed against you. You will be in default if the Vehicle is lost, **damaged beyond repair, or destroyed.** You will be in default if you do not keep any other agreement in this Contract.

If you are in default, we may require you to pay at once the unpaid Balance of Cash Price and Other Charges, the earned and unpaid part of the Finance Charge and all other amounts due under this Contract (the entire unpaid balance). If as a consequence of your default we require that you pay the entire unpaid balance, we will charge you interest at the Contract Rate or, if the Contract Rate is zero, at the highest rate authorized by applicable law on the entire unpaid balance from the date of our notice to you demanding payment of the entire unpaid balance. Additionally, we may take back (repossess) the Vehicle. We may also take items of personal property found in the Vehicle when we take back the Vehicle and hold them for you. If you do not claim them within the time required by law, we will dispose of them in a commercially reasonable manner. We may cancel any insurance or other products or services you have purchased in this Contract and apply any refunds we receive to the amount you owe. You agree to pay any attorneys' fees and collection costs we incur at any time in collecting amounts you owe under this Contract, including during any bankruptcy proceedings or upon any appeal.

If we take back the Vehicle, we will sell it unless you exercise any right to cure or redeem the Vehicle that you may have under state law. The sale proceeds, less amounts we pay to take back the Vehicle, hold it, prepare it for sale, and sell it, and less our attorneys' fees and legal costs if permitted by law, will be used to pay the amount you owe on this Contract. Any money left will be paid to you unless the law requires that we pay it to someone else. If the sale proceeds are not enough to pay off this Contract and costs, you will pay what is still owed (the deficiency) to us. If we repossess the Vehicle, you may be required to pay our actual costs of taking and storing the Vehicle, to the extent such charges are not prohibited by law.

We can, without notice, delay enforcing our rights or exercise only part of them without losing them, waive a right we have without waiving it for subsequent opportunities to exercise that right, and waive a right we have as to one Buyer without waiving it as to the other(s). You also expressly waive presentment, notice of dishonor, protest and notice of protest.

**Assignment:** You may not assign your rights in the Vehicle or under this Contract without our permission. We may sell or assign our rights in this Contract without your permission. We may sell or assign this Contract for an amount that is more than or less than the Balance of Cash Price and Other Charges.

**General:** Any change in this Contract must be written and signed by you and us. The law of the state of the Dealer's place of business shown in this Contract applies to this Contract. If that law does not allow all the agreements in this Contract, the ones that are not allowed will be void. The rest of this Contract will still be good. You promise you have given a true payoff amount on any vehicle traded in. If that payoff is more than the amount shown in 6.B in the Itemization of the Amount Financed on the second page of this Contract, you must pay us the excess upon demand. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.

**Waiver of California Vehicle Code Section 1808.21:** You waive the provisions of California Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**After-Sale Review and Verification Process:** The Vehicle is sold to you subject to an after-sale review and verification of the information you have provided to us. You have agreed to cooperate with the after-sale review and verification process. If we cannot verify the information you have provided to us, or any information you provided to us is false, there is a material adverse change in such information during the review process, or you do not cooperate in the verification and review process, you will be in default under the terms of the Contract.

**Trade-In Representation and Warranty:** You represent and warrant that your trade-in vehicle described in the Buyers Order/Purchase order, if any, is not a titled salvage, flood, taxi, police or rebuilt vehicle; the odometer has not been replaced, repaired, changed or rolled back; all emission control equipment is on the trade-in and is working; you will provide to us the Certificate of Title (or documents that allow us to obtain it), and, you have the right to sell the trade-in.

**Odometer (mileage):** Each your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by

**CUSTOMER COPY**
(Signed English original on file with DriveTime.)

applicable law, neither of us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the Vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the Vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the completion of the sale.

**References/Credit Reports:** We may contact your employer or your references to verify the information you provided to us in your application or in connection with this Contract. We may also contact your employer or your references if we are unable to locate you. The servicer of this Contract may also do so. Federal or state law may limit these contacts. You also consent to us or a servicer, obtaining a credit report(s) in connection with the servicing of the Contract.

**Liability Insurance Required:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Contract.

**Record Retention:** You agree that we may maintain documents and records related to the Vehicle and the Contract electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial or non-judicial or regulatory proceeding relating to the Vehicle.

**Communications With You:** You agree that we may contact you in writing, by e-mail, or using prerecorded/ artificial voice messages, text messages, chat, instant messages, and automatic dialing systems, to the extent not prohibited by law. You also agree that we may contact you at any address or telephone number you provide us, even if the telephone number is a mobile phone number and you are charged for it by your mobile phone service provider. The content of electronic communications may include legal notices required by law, other notices, contract documents, confirmation of payments, and DriveTime information and marketing materials. If state or federal law requires us to give you notice or information that does not contain confidential private information (for example, notices describing our privacy policy) you agree where permitted by law, we may post it on the DriveTime web site and you have received the information or notice that has been posted. You understand this means you need to check our web site www.drivetime.com occasionally to confirm if anything has been posted. With respect to email communication, although unlikely, emails are not protected and may be intercepted. We will assist one another if any problems arise. If you do not want us to contact you by email, simply notify us by calling the following toll-free number 800-967-8526 or visit http://www.drivetime.com/optout/default.aspx. Note that we may monitor or record for customer satisfaction and quality purposes our dealings with you, including telephone conversations. You agree that we, any affiliate, successor, or assign servicing this Contract on our behalf, may do so.

**60 Day Contract Rate Buy Down:** If you are current on your payments or bring the Contract current, you have not given us any insufficient funds checks, and you are not in default of this Contract, you have the option of making an additional payment on or before sixty (60) days after your execution of this Contract. A portion of this payment will be applied to any accrued and unpaid finance charges at the time of the payment and the remainder will be applied to reduce your principal balance. Depending upon the amount of the additional payment, the Contract rate under your Contract also will be reduced. The additional payment is not in lieu of any other payment shown in your payment schedule including irregular payments. This additional payment is completely optional; you are not required to make this payment. The following chart shows how much you can reduce your Contract rate depending upon the amount of this additional payment. At the time of the additional payment, we can change the amount of your regular payments and/or your term. We will discuss your options with you at that time.

| With an additional payment of $ | 250.00 | you will receive a Contract rate of | 22.091 |
|---|---|---|---|
| With an additional payment of $ | 500.00 | you will receive a Contract rate of | 21.304 |
| With an additional payment of $ | 750.00 | you will receive a Contract rate of | 20.476 |
| With an additional payment of $ | 1,000.00 | you will receive a Contract rate of | 19.604 |
| With an additional payment of $ | 1,250.00 | you will receive a Contract rate of | 18.683 |
| With an additional payment of $ | 1,500.00 | you will receive a Contract rate of | 17.710 |
| With an additional payment of $ | 1,750.00 | you will receive a Contract rate of | 16.678 |
| With an additional payment of $ | 2,000.00 | you will receive a Contract rate of | 15.584 |

**Assignment of Dealer:** For value received, Dealer hereby transfers and assigns to DT ACCEPTANCE CORPORATION ("Assignee") all of its right, title, and interest in this Contract and the Vehicle. This transfer and assignment is made pursuant to and is subject to any Agreement between Dealer and Assignee by which Assignee has agreed to accept the transfer and assignment of contracts from Dealer.

CUSTOMER COPY
(Signed English original on file with DriveTime.)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Dolly M. Gee _____ and to
Magistrate Judge _____ Margaret A. Nagle _____ .

The case number on all documents filed with the Court should read as follows:

## 14-CV-03227 DMG-MANx

Pursuant to General Order 05-07 of the United States District Court for the Central District of
California, the assigned Magistrate Judge has been designated to hear discovery-related
motions.  All discovery-related motions should be noticed on the calendar of the Magistrate
Judge.

Clerk, U. S. District Court

_____ April 28, 2014 _____          By  SBOURGEOIS _____
Date                                             Deputy Clerk

---

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases
removed from state court, on all parties served with the Notice of Removal) by the party who filed the
Complaint (or Notice of Removal).*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Connie M. Davis-Grey

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
DriveTime Car Sales Company, LLC, DT Acceptance Corporation, and Fidelity and Deposit Company of Maryland

**(b)** County of Residence of First Listed Plaintiff Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Maricopa Cty. AZ
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Halen D. Rosner (SB# 109740)
Dan R. Turner (SB# 280039)
Rosner, Barry & Babbitt, LLP
10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131
(858) 348-1005

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Joshua G. Hamilton (SB# 199610)
Nicholas J. Begakis (SB#253588)
Paul Hastings LLP
515 S. Flower St., 25th Floor
Los Angeles, CA 90071

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 100,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Diversity pursuant to 28 USC 1332, 1441, & 1446

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV14-3227

COPY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes ☐ No <br><br> If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☒ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? <br><br> Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? <br><br> Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☒ No <br><br> If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➜

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➜ | Western Division |

CV-71 (11/13)    CIVIL COVER SHEET    Page 2 of 3

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____    DATE: April 28, 2014

Nicholas J. Begakis

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.
www.FormsWorkFlow.com